879 F.2d 863
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dowell RICHARDSON, Defendant-Appellant.
 No. 88-5116.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 10, 1989.
Decided: July 14, 1989.
 
 Anthony Franklin Anderson (Melissa W. Friedman; Thomas M. Blaylock, on brief), for appellant.
 Jennie L. Montgomery, Assistant United States Attorney (John P. Alderman, United States Attorney, on brief), for appellee.
 Before ERVIN, Chief Judge, and HAYNSWORTH and BUTZNER, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 The issue before us is whether the district court abused its discretion in refusing to allow Dowell Richardson to withdraw his Alford pleas of guilty to five counts of bank fraud and one count of conspiracy to commit bank fraud. Because we find considerable evidence that Richardson understood the implications of his plea, we defer to the district court's conclusion that Richardson could have understood, and probably did understand, the plea proceedings.
 
 I.
 
 2
 Richardson, along with his wife and several others, was charged in a six-count indictment with numerous acts of fraud arising from an alleged check-kiting scheme. Richardson originally pled not guilty to all counts at his March 30, 1987, arraignment.
 
 
 3
 The case was originally set for a week-long jury trial to begin on June 8, 1987. The trial was continued after the defendants' original lawyer had to withdraw due to a conflict of interest. On October 20, 1987, the defendants appeared to arrange a new trial date. Richardson and another defendant, Ryder Energy, Inc., asked to appear pro se, having not secured new counsel. At the United States' request, the district court ordered appointment of counsel for each. Trial was then set to begin on February 1, 1988, and was later continued to February 2.
 
 
 4
 By February 2, defendants Webb and Cox were willing to enter guilty pleas and to testify against Richardson. Thirty-eight veniremen were present at the courthouse, as well as the remaining defendants and their lawyers. The United States had summonsed thirty-six witnesses from four states.
 
 
 5
 On the morning of February 2, the prosecutor asked Richardson's lawyer whether Richardson might enter Alford guilty pleas to all six counts in exchange for a dismissal of the charges against his wife.[1] Apparently, the prosecutor had at some point discussed with Richardson the option of a non-Alford guilty plea to one count, but this offer was no longer open on February 2. Richardson elected to take the Alford plea route and, after due hearing, the district court accepted the pleas. Sentencing was set for June 2, 1988.
 
 
 6
 Before June 2, Richardson, appearing with his two new lawyers, asked for and received a continuance to July 11. On June 30, Richardson moved to withdraw his Alford pleas. The district court heard the motion on July 1. After reviewing the transcript of the February 2 rearraignment, the court denied the motion on July 8. The district judge briefly explained his reasons for the denial at the July 11 sentencing hearing, and detailed the reasons more fully in a July 15 memorandum opinion. Richardson received a sentence of four years' imprisonment and three years' probation, all stayed pending resolution of this appeal.
 
 II.
 
 7
 Richardson moved to withdraw his pleas under Fed.R.Crim.P. 32(d), which grants the district court discretion to permit withdrawal "upon a showing by the defendant of any fair and just reason." Richardson's argument was that his plea was, in essence, inadvertent, entered under the misimpression that he would have a later opportunity to dispute the charges. The district court concluded that the course of events through its acceptance of Richardson's plea ought to have educated Richardson on the effects of an Alford plea, and that Richardson likely in fact knew what he was doing. We briefly relate the important events and relationships that persuade us that the district court soundly exercised its discretion.
 
 
 8
 The most important relationships are those between Richardson and his attorneys, who he says gave him incorrect or incomplete advice about the Alford plea, and between Richardson and the district judge, who Richardson says failed to dispel his misapprehensions. Until a few months after the March 30, 1987, initial arraignment, Richardson's attorney was Richard Cranwell. Cranwell withdrew from Richardson's case in midsummer, 1987, though he may have continued to represent other defendants in the case.
 
 
 9
 Richardson then decided he would represent himself. Richardson's impulse toward self-reliance manifested itself from then on, complicating his relationship with his subsequent attorneys.[2]
 
 
 10
 Unconvinced that Richardson would be his own best representative, the district court appointed Barry Proctor to counsel Richardson. Proctor first met with Richardson in January, 1988, and again once or twice before trial. Richardson asked Proctor to subpoena a loan document and some witnesses, and Proctor apparently did or tried to do so. Richardson generally did not trust court-appointed counsel, though, and told Proctor so. We find no indication that Richardson sought his own counsel after Cranwell withdrew, or requested more time in which to do so.
 
 
 11
 Richardson continued to try to handle some aspects of his case himself after Proctor came aboard. He had four or five solo contacts with the prosecutor. A week or so before the trial date, Richardson says the prosecutor made an offer to drop the case against Mrs. Richardson in exchange for Richardson's plea of guilty to a count of his choice. The prosecutor apparently repeated the offer several times on later dates; the offers were not for Alford pleas, and Richardson says he declined them because he believed he was innocent and could prove it.
 
 
 12
 At about 9:00 a.m., or shortly thereafter, on February 2, Proctor approached Richardson, who was in the courtroom waiting for the trial to begin. The prosecutor had broached the idea of an Alford plea to Proctor and asked him to relate the idea to Richardson. This was the first Richardson had heard of such a plea. Proctor said, though, that Richardson had discussed the possibility of entering some plea with him and that "Mr. Richardson's feeling at that time (a few days before trial) was ... that a misdemeanor count would be appropriate for his involvement, but that ... a felony count was more than was justified under (the) circumstances." Proctor then contacted the prosecutor to see how the United States perceived Richardson's culpability and whether he could get a deal similar to those other defendants had received.
 
 
 13
 Proctor testified that he had long been familiar with Alford pleas. Proctor recalled a conversation lasting an hour to an hour and a half in which he and Richardson discussed an Alford plea to the whole indictment as an alternative to a standard plea to one count. Proctor says he explained the implications of an Alford plea to Richardson as he had done to defendants in other cases and, in response to Richardson's question whether he would have an opportunity to present his side, said "at a later sentencing hearing he would have an opportunity to present evidence."
 
 
 14
 James Harman, Mrs. Richardson's attorney, was in the courthouse law library where Proctor and Richardson met to discuss the Alford option. Harman was unfamiliar with Alford, so Proctor gave him an explanation of the case and plea. Based on this explanation, and the prosecutor's offer to dismiss the case against his client in exchange for the plea, Harman recommended that Richardson make the plea.[3] Eugene Compton, Ryder's counsel, was also present and, after Proctor's briefing on Alford, concurred in the recommendation.
 
 
 15
 Richardson reluctantly decided to take an Alford plea, and proceeded to a rearraignment hearing. Richardson, Webb, and Cox pled guilty in exchange for dismissals of the cases against Ryder and Mrs. Richardson. The prosecutor recited the maximum penalties for each of the six counts, and each defendant stated that he understood. The prosecutor stated that the United States had made no representations or promises about penalties.
 
 
 16
 The district judge then addressed the three defendants together. Webb and Cox did not tender Alford pleas. The judge stated "Now, I understand there's one Alford plea in which he's saying, "Well, I'm not admitting that I did it, but I'd rather plead guilty than go through a trial." And the only thing remaining to be done is for the Court to hear some evidence concerning the commission of the offense and then impose punishment."[4]
 
 
 17
 The judge explained that the pleas waived the presumption of innocence, the right to trial, the right to testify on one's own behalf, and the right to present witnesses and other evidence of innocence. Each defendant said he understood.
 
 
 18
 The judge then heard testimony and took evidence to substantiate the United States' case against the defendants. After the United States rested, Proctor stated, in response to the judge's question whether Richardson had any evidence concerning guilt, "Your Honor, I think we'd have things in mitigation ...". The judge responded "That would be in mitigation of punishment, not going to guilt." Proctor did not object. The judge then accepted the pleas of all three.
 
 
 19
 Shortly after pleading, Richardson changed his mind. Richardson testified at the Rule 32(d) hearing that he appreciated that withdrawing his plea might cause the United States to refile the charges against his wife, but that he and she had accepted this in their belief in his innocence.
 
 III.
 
 20
 We perceive the evidence of what information Richardson received from his lawyers and at the Rule 11 proceeding as sufficient to support the district court's refusal to allow withdrawal of the plea. We accordingly affirm for the reasons stated in the district court's opinion. United States v. Richardson, CR 87-12-R (W.D.Va., July 15, 1988).
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 In North Carolina v. Alford, 400 U.S. 25, 37-38 (1970), the Court held that there is no constitutional obstacle to acceptance of the guilty plea of a defendant who, despite his or her voluntary and knowing consent to the imposition of criminal sanctions, continues to profess innocence, so long as the prosecution's evidence demonstrates a strong factual basis for the plea. "Alford pleas" are what Richardson ultimately opted to enter
 
 
 [2]
 It is appropriate to note here that Richardson had one year of schooling after high school, ran his own business, had no drug, alcohol, or psychological problems, and so likely was, as the district court found, "an intelligent person ... fully capable of understanding the [Alford plea] proceedings". Richardson's attempt to proceed pro se suggests he thought he could handle himself before the court
 
 
 [3]
 After reading Alford, Harman became unsure whether his recommendation was sound, whether he had "received a full and complete analysis of the ... case". Upset about having possibly contributed to Richardson's decision to plead, Harman visited the district judge to describe his misgivings on February 10, 1988. The judge told Harman "he would accord Mr. Richardson and his attorney all the time necessary to present their position before him."
 
 
 [4]
 While we affirm the district court's conclusion that Richardson understood the Alford plea, we recognize the potential confusion, for the defendant entering an Alford plea, of a single Rule 11 hearing on both Alford and non-Alford pleas. Where practicable, then, we recommend that a district court either conduct separate hearings or make some specific inquiries to those offering to plead under Alford, to ensure that the implications of the plea are clearly understood